<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ESME HARRY, | **On Appeal From**: Case No. 14-33755-RG |
| Debtor. | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, | |
| | Case No. 2:24-cv-07905 (BRM) |
| Appellant, | |
| v. | **OPINION** |
| ESME HARRY, | |
| Appellee. | |

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court is an appeal (ECF No. 1) filed by Appellant Wilmington Savings Fund Society, FSB ("Appellant") from the Bankruptcy Court's July 17, 2024 Order ("July Order") (ECF No. 1-2) denying Appellant's March 15, 2024 motion for reconsideration ("Reconsideration Motion") of Judge Rosemary Gambardella ("Bankruptcy Judge")'s March 1, 2024 Order ("March Order"). Having reviewed the parties' submissions filed in connection with the motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, this appeal (ECF No. 1) is **DENIED**.

1

I.    **BACKGROUND**[1]

"[O]n June 8, 2023," Appellant filed a Certificate of Default on the basis that Esme Harry ("Appellee") had allegedly "become delinquent on property taxes." (ECF No. 5 at 18.) Sometime thereafter, according to Appellant, Appellee filed an opposition, and "the Bankruptcy Court scheduled a hearing . . . [for] August 16, 2023." (*Id.*) At that hearing, the Bankruptcy Court instructed the parties to meet and confer about a repayment plan on the [post-petition property] taxes." (ECF No. 8 at 12.) "On September 14, 2023, Appellant filed a request to relist [the Certificate of Default]" (*id.*) because they could not successfully "obtain[] a repayment plan from the Appellee." (ECF No. 5 at 18.) After a subsequent "hearing on October 18, 2023, the Bankruptcy Court entered an order on November 2, 2023 . . . adjourning the hearing on [the Certificate of Default] to December 20, 2023[.]" (ECF No. 8 at 12.) The Bankruptcy Judge again adjourned "the hearing . . . to January 17, 2024[.]" (ECF No. 5 at 19.) Later, "[t]he Bankruptcy Court adjourned the hearing until February 7, 2024." (ECF No. 8 at 12.) After the February 7, 2024 hearing, the Bankruptcy Judge denied Appellant's Certificate of Default by issuing the March Order. (*See* ECF No. 5 at 20; ECF No. 8 at 12.)

"[O]n or about March 15, 2024," Appellant filed the Reconsideration Motion related to the Bankruptcy Judge's March Order. (ECF No. 5 at 20.) Appellee subsequently filed "two . . . [o]ppositions to the Reconsideration Motion." (*Id.*) Thereafter, the Bankruptcy Judge adjourned the hearing "on the Reconsideration Motion from April 17, 2024 to April 25, 2024, and then finally to May 1, 2024." (*Id.* at 20–21; ECF No. 8 at 13.) At the hearing on May 1, 2024, "the Bankruptcy Court . . . adjourn[ed] to May 22, 2024" and "requested a [t]ranscript" from an earlier hearing.

---

[1] The Court writes for the parties and assumes familiarity of the facts. Accordingly, in the interest of judicial economy, the Court includes only the facts and procedural background relevant to the Reconsideration Motion.

(ECF No. 5 at 21.) Appellant requested and later docketed the requested transcript on May 13, 2024. (ECF No. 5 at 21.) The Bankruptcy Judge again "adjourn[ed] the hearing on the Reconsideration Motion "from May 22, 2024 to May 29, 2024[,] and then finally to June 20, 2024." (ECF No. 5 at 21; *see* ECF No. 8 at 13.) According to Appellant, "[i]n hopes of preventing further adjournment of the Reconsideration Motion, Appellant . . . filed a correspondent requesting that the Bankruptcy Court make a final determination on the Reconsideration Motion at the hearing on June 20, 2024." (ECF No. 5 at 21.)

According to Appellee, at the hearing on June 20, 2024, the Bankruptcy Judge was "careful to delineate which [previous] order was the subject of the Motion for Reconsideration" (ECF No. 8 at 13), clarifying that the Reconsideration Motion concerned only the March Order. (*See id.*) At that hearing, the Bankruptcy Judge denied the Reconsideration Motion. (ECF No. 5 at 21; ECF No. 8 at 14.) On July 17, 2024, the Bankruptcy Judge's decision was formalized in the July Order. (ECF No. 5 at 5.) On July 18, 2024, Appellant timely filed this appeal. (ECF No. 5 at 5.)

## II.  JURISDICTION

This Court has jurisdiction to review the bankruptcy court's July Order. District courts possess mandatory jurisdiction over appeals "from final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). "An order denying reconsideration is final if the underlying order is final and together the orders end the litigation on the merits." *See In re Kara Homes, Inc.*, Civ. A. No. 19-cv-19110, 2020 WL 3496958, at *2 (D.N.J. June 29, 2020) (internal quotations and alterations omitted); *see also* Bankr. R. 9023 (stating "Rule 59 F.R. Civ. P. applies in cases under the [Bankruptcy] Code"). To that end, reviewing courts

> consider four factors to determine whether a [lower] court's decision in a bankruptcy case is final: (1) the impact of the assets of the bankruptcy estate; (2) the need for further fact-finding on remand;

>  (3) the preclusive effect of a decision on the merits; and (4) the
>  interests of judicial economy.

*In re Armstrong World Indus.*, 432 F.3d 507, 511 (3d Cir. 2005) (citing *In re Owens*, 419 F.3d 195, 203 (3d Cir. 2005)). Courts apply this four-factor test against a background of "pragmatic considerations unique to this area of law" and, regardless, "have traditionally applied a relaxed standard of finality in bankruptcy cases." *Buncher Co. v. Off'l Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d. Cir. 2000).

### III.    LEGAL STANDARD

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." *In re Beers*, Civ. A. No. 09-1666, 2009 WL 4282270, at *3 (D.N.J. Nov. 30, 2009) (quoting *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (Bankr. D.N.J. 2005)). A district court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130–31 (3d Cir. 1998)).

Pursuant to Bankr. R. 9033(d), a district judge exercises *de novo* review over "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Bankr. R. 9033(d). Those specific written objections are to be made "within 14 days after being served with a copy of the proposed findings of fact and conclusions of law." Bankr. R. 9033(b). Following a showing of cause, the bankruptcy judge may extend the time to file an objection for another 21 days from the expiration of the initial timeframe. Bankr. R. 9033(c).

With respect to motions for reconsideration, their purpose "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909

(3d Cir. 1985); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991) (suggesting that a motion for reconsideration ought to "be limited to exceptional circumstances"); (ECF No. 5-5 at 67 (Bankruptcy Judge noting that "a motion for reconsideration is considered an extraordinary remedy which should be used sparingly and limited to exceptional circumstances")). "A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice." *N. River. Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks omitted). Appellant, as the moving party, "must show more than a disagreement with the [c]ourt's decision," and carries the burden to demonstrate cause for reconsideration. *See Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993). The standard of review for denial of a motion for reconsideration "is generally whether the district court abused its discretion, [but] if the court's denial was based upon the interpretation and application of a legal precept, review is plenary." *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985).

## IV.  DECISION

### A.  Permissibility of Chapter 13 Case Exceeding Five Years

Appellant contends that the Bankruptcy Judge "violat[ed] the plain language of the Bankruptcy Code limiting the amount of time [] a debtor may remain within the purview of the Bankruptcy Code and Bankruptcy Court." (ECF No. 5 at 23.) More specifically, Appellant argues "the Bankruptcy Court violated the terms of 11 U.S.C. § 1322(d)(1) and § 1329(c) by allowing Appellee ten (10) years to complete her Chapter 13 Bankruptcy over the repeated objections by [] Appellant." (*Id.* at 26.) Further, Appellant notes the "Bankruptcy Court could not find cause to extend [the Chapter 13 case] beyond the five (5) year limitations under *Klaas*" and "provided no

basis for its improper extensions . . . [and] instead focus[ed] solely on its application of the *Klaas* factors to justify impermissibly doubling the Appellee's Commitment Period." (*Id.* at 27.) In particular, Appellant "avers that the Bankruptcy Court erred in its application of the *Klaas* factors . . . [by] focus[ing] on only two (2) of the five (5) *Klaas* factors — substantial compliance and prejudice to the client." (*Id.*) Appellant further argues that "*Klaas* and the case-at-bar differ in terms of their factual components." (ECF No. 9 at 1.) Assuming *Klaas* applies, Appellant posits that "the majority of the non-exhaustive factors [enumerated in that case] weigh in favor of the Appellant" (*id.* at 2), and notes that "the Bankruptcy Court carefully selected which factors to review in a light most favorable to the Appellee[.]" (*Id.* at 3.)

Appellee counters that "the Bankruptcy Court [] properly exercise[d] its discretion under *In re Klaas* . . . [when] extend[ing] Ms. Harry's time to complete a cure under her Chapter 13 plan for a reasonable period." (ECF No. 8 at 15.) More specifically, Appellee argues that "Appellant attempts to paint Ms. Harry's . . . 'ten year' plan [as] impermissible under §§ 1322 and 1329 of the Bankruptcy Court . . . [but] reliance on that statutory construct is misplaced." (*Id.*) Appellee contends that "[t]he relevant analysis is the non-exhaustive multi-factor test outlined in *Klaas* and . . . the Bankruptcy Court completed a reasoned and fulsome analysis of those factors." (*Id.*) In particular, Appellee highlighted the several factors the Bankruptcy Judge considered "when deciding to allow Ms. Harry additional time to make a curative payment" (*id.* at 23), including:

> (i) the substantial amounts Ms. Harry already paid into the plan, (ii) the case was near its end, (iii) Appellant had indeed filed multiple certifications of default, (iv) that there was some protection to Appellant in the equity value of the property, and (v) that the Bankruptcy Court wanted to avoid an unnecessary forfeiture of the property[] which courts general[ly] disfavor.

6

(*Id.*) Finally, Appellee notes "that even if it was not a specifically delineated *Klaas* factor, the *Klaas* list is a 'non-exhaustive' list, thereby affording a bankruptcy court some flexibility in its discretion." (*Id.* at 24.)

The five-year limit contemplated by the Bankruptcy Code refers to the maximum length permissible for confirmation or modification of Chapter 13 plans, not necessarily as well to the overall duration of such plans. *Compare* 11 U.S.C. § 1329 ("A plan modified under [Chapter 13] may not provide for payments over a period that expires after the applicable commitment period . . . unless the court, for cause, approves a longer period, but *the court may not approve a period that expires after five years after such time*[]" (emphasis added)), *with In re Klaas*, 858 F.3d 820, 828 (3d Cir. 2017) ("[B]ankruptcy courts retain discretion under the Bankruptcy Code to grant a reasonable grace period for debtors to cure an arrearage[.]"); *but see In re Kinney*, 5 F.4th 1136, 1147 (10th Cir. 2021) (rejecting the Third Circuit's holding in *Klaas*, noting "[r]ecent legislation suggests congressional recognition that the bankruptcy code prohibit[s] informal cures after expiration of the five-year [plan] period[,]" and holding that bankruptcy courts cannot permit debtors "to cure . . . default[s] once the[ir] plan's five-year period end[s]"). Although bankruptcy judges are prohibited from approving a Chapter 13 plan with a term greater than five years, in this Circuit bankruptcy judges need not dismiss a pending case that happens to exceed such a duration. *See In re Leahey*, Civ. A. No. 11-11906, 2017 WL 4286136, at *2 (D.N.J. Sept. 26, 2017) (explaining the *Klaas* court "distinguished between approving a plan with a term greater than five years, and dismissing a case because it exceeds five years"); *cf. In re Hussain*, 250 B.R. 502, 509 (Bankr. D.N.J. 2000) (stating that "under no circumstances may a bankruptcy court confirm a chapter 13 plan that extends payment beyond the maximum five year statutory limitation set forth in § 1322(d)"); 11 U.S.C. § 1322(d)(1) ("[T]he plan may not provide for payments over a period

7

that is longer than 5 years."). Indeed, the Third Circuit has directly spoken on the issue of "whether bankruptcy courts may confirm a plan or plan modification that proposes a plan term greater than five years[,]" holding "[p]lainly, it may not." *Klaas*, 858 F.3d at 828. Further, "while section 1307 provides that a court may dismiss a case for 'material default,' that provision is *permissive*." *Leahey*, 2017 WL 4286136, at *2 (emphasis added) (citing *Klaas*, 858 F.3d at 829); *see also* 11 U.S.C. § 1307 ("[O]n request of a party in interest . . . and after notice and a hearing, the court may . . . dismiss a case under . . . [Chapter 13 because of] . . . material default by the debtor with respect to a term of a confirmed plan."); *but see Kinney*, 5 F.4th at 1147.

Here, the Bankruptcy Judge sought only to allow Appellee to complete the plan, rather than confirm or modify a plan beyond the statutorily permissible length. As the Bankruptcy Judge noted,

> I had to give consideration, notwithstanding the fact that this is a cramdown case, to the substantial amounts paid by this debtor into the plan . . . we are really at the end of this case but it has to come to a close, so I am going to allow for payment of $2,000 per month.

(ECF No. 5-5 at 69.) The record does not reflect efforts by the Bankruptcy Judge to confirm or modify a plan exceeding 60 months, which would be in violation of §§ 1325(a)(1) and 1329(b)(1) of the Bankruptcy Code. Rather, the Bankruptcy Judge "exercise[d] its discretion" by looking to the "factors that are articulated by the Third Circuit in *Klaas*." (*Id.* at 67.) In fact, the Bankruptcy Judge explicitly highlighted the Third Circuit's holding in *Klaas*, noting that "bankruptcy courts retain discretion under the [Bankruptcy] Code to grant reasonable grace periods for the debtor to cure an arrearage." (*Id.* at 67–68.)

Accordingly, this Court agrees with the Bankruptcy Judge's analysis that "there was [no] clear error of law in crafting the March [] order, nor is there a need to reconsider the order to prevent manifest injustice to [Appellant]." (*Id.* at 70.) The Bankruptcy Judge's granting of a grace

period is aligned with the principles motivating Chapter 13—including a preference for, where possible, reaching discharge (*see id.* at 69) and "avoid[ing] . . . unnecessary forfeiture" (*id.* at 70)[2]—and falls within the cover of *Klaas*. Therefore, on this issue, there is no clear error of law and Appellant has not suffered manifest injustice. Appellant's Reconsideration Motion was properly rejected by the Bankruptcy Judge's July Order.

      **B.**      **Permissibility of Bankruptcy Judge's Modification of Plan Negotiated by Parties**

Appellant contends that "the Bankruptcy Court impermissibly altered the terms of the agreements of the parties instead of enforcing the plain language of not only the prior Orders, but also failing to enforce its own Orders solely to the detriment of [] Appellant." (ECF No. 5 at 23.) Appellant believes this constitutes "manifest injustice" and took issue with the fact that "the Bankruptcy Court continu[ally] . . . den[ied] Appellant the remedies to which it was entitled despite . . . Appellant repeatedly demonstrat[ing] its entitlement to the requested relief." (*Id.* at 23–24.) It is Appellant's position "that the Bankruptcy Court erred as a matter of law in denying its Reconsideration Motion [because] the Bankruptcy Court lacked the statutory authority to alter the terms" of the plan negotiated by the parties. (*Id.* at 30.) That is, "[i]n granting Appellee a period of nearly ten (10) [years,]" Appellant claims "the Bankruptcy Court unilaterally altered the agreed upon terms of the Appellant and the Appellee" in violation of the Bankruptcy Judge's "equitable powers under § 105(a)." (*Id.* at 32.) Because by "enter[ing] into a consensual bargain . . . Appellant g[ave] up its due process rights to litigate its [o]bjection[s]" (*id.* at 32–33), Appellant effectively argues, *inter alia*, they were prejudiced by the Bankruptcy Judge's unilateral alteration of that

---

[2] At an earlier hearing, the Bankruptcy Judge also noted that "[a]t the same time[,] this plan has to be finished. *Congress did not mean for debtors to be in bankruptcy years on end*. So[,] the parties should negotiated a form of order that makes it clear that the payments have to be made." (ECF No. 5-5 at 35 (emphasis added).)

9

bargain. Appellant also notes "it is clear that [] Appellant was unduly prejudiced by . . . [Appellee's] inability . . . to comply with the [Bankruptcy Judge's previous orders, amended orders, and extension orders]." (*See* ECF No. 9 at 2.) Moreover, Appellant argues that, "in disregarding the plain language [of the agreement of the parties], the Bankruptcy Court . . . created new substantive rights . . . ma[king] it clear that Appellant is the only party to which [the consensual bargains'] binding effect applied." (ECF No. 5 at 34.) Appellant also argues that "[d]espite the fact [] the issue of § 105(a) was brought up in the Reconsideration Motion" (*id.*), the Bankruptcy Judge "purposely avoided the topic of whether the Bankruptcy Court had exceeded its equitable powers[.]" (*Id.*)

Appellee counters that the Bankruptcy Judge was simply responding to a "problem . . . not discovered until late in the case"; a scenario for which "the Bankruptcy Code does not expressly provide [a solution]." (ECF No. 8 at 19.) Appellee argues the Bankruptcy Judge's March Order "conforms with the *Klaas* decision" and that, regardless, "Appellant fails to cite any support for its assertions that the Bankruptcy Judge could not enter the March [] Order simply because it impacted previously entered consensual orders . . . negotiated and agreed to by the parties." (*Id.* at 26.) Appellee further contends that even if the Bankruptcy Judge's exercise of discretion went beyond that contemplated by "the *Klaas* test" (*id.*), "the Bankruptcy Court would have still been well within its powers to extrapolate discretion from the statutory construction . . . of §§ 1307, 1322, 1328 and 1329[.]" (*Id.*)

"The Supreme Court has long recognized that bankruptcy courts are equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings." *Official Comm. of Unsecured Creditors of Cybergenics Corp.*, 330 F.3d 548, 567 (3d Cir. 2003). Further, although the Bankruptcy Code's enactment in 1978 "increased the degree of regulation Congress imposed

upon bankruptcy proceedings, [] it did not alter bankruptcy courts' fundamental nature." *Id.* (citing H.R. Rep. No. 95–595, at 359 (1977), *reprinted in* U.S.C.C.A.N. 5963, 6315). The Supreme Court has acknowledged time and again that equitable principles apply in bankruptcy proceedings. *See, e.g.*, *Youngs v. United States*, 535 U.S. 43, 50 (2002) ("[B]ankruptcy courts [] are courts of equity and 'app[ly] the principles and rules of equity jurisprudence.'"); *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990) (noting "the traditional understanding that bankruptcy [are] courts of equity [and] have broad authority to modify creditor-debtor relationships"). Perhaps most importantly, the Bankruptcy Code itself explicitly articulates bankruptcy courts are empowered by Congress to apply equitable principles. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

However, "the equitable powers authorized by § 105(a) are not without limitation . . . [and] this section does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (2004) (internal quotation marks omitted). That is, "[t]he general grant of equitable power contained in [§] 105(a) cannot trump specific provisions of the Bankruptcy Code[] and must be exercised within the parameters of the [Bankruptcy] Code itself." *Id.* (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

Here, all parties appear to agree bankruptcy courts are prohibited from creating new substantive rights despite their equitable powers. (*See* ECF No. 5 at 31; ECF No. 8 at 25.) However, Appellant has not carried its burden to show how permitting a grace period for Appellee to satisfy her outstanding debts, in accordance with *Klaas*, constitutes the creation of a new substantive right. Even if the Bankruptcy Judge's March Order sounds in substantive rights—which it does not clearly do—such substantive rights would necessarily not be new because, as the Bankruptcy

11

Judge acknowledged, "the arguments made here were analogous to those that were made in the *Klaas* case" (ECF No. 5-5 at 68), and there a grace period was also upheld.

Further, while Appellant takes issue with the Bankruptcy Judge's "unilateral[] alter[ation of] an Order[] negotiated by the parties" (ECF No. 5 at 23), Appellee rightly points out that Appellant nonetheless "fails to cite any support for its assertions that the Bankruptcy Court could not enter the . . . [o]rder simply because it impacted previously entered consensual orders that had been negotiated and agreed to by the parties." (ECF No. 8 at 26.) Neither did Appellant cite to case law for this proposition in its reply brief. (*See* ECF No. 9 at 3–4.) It is not this Court's responsibility to sift through the record to find evidence and make arguments supporting Appellant's position. *See DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) (noting that "judges are not like pigs, hunting for truffles buried in briefs" (internal citation and quotation marks omitted)). The Bankruptcy Judge's March Order does not read, in principle or effect, as "a roving commission to do equity." *Combustion Eng'g, Inc.*, 391 F.3d at 236. Instead, the March Order appears as an equitably fashioned solution for Appellee's case to timely reach discharge by satisfying her outstanding debt to Appellant, namely in the form of a grace period. While Appellant is welcome to challenge the thoroughness of the Bankruptcy Judge's weighing of the factors articulated by the *Klaas* Court, the Bankruptcy Judge nevertheless did "address[] in some significant part the so-called *Klaas* factors" (ECF No. 5-5 at 70), and the factors enumerated there are notably "non-exhaustive" regardless. *Klaas*, 858 F.3d at 832. Accordingly, on this issue, as before, there is no clear error of law and Appellant has not suffered manifest injustice.[3]

---

[3] Appellee argues that Appellant waived its right to even appeal this issue on the basis that Appellant also benefited from the delays and extensions in this case. (*See* ECF No. 8 at 26–31.) The Court finds this argument is without merit, with little on-point support in case law or relevant statutory provisions. Appellant counters, also without reference to on-point support in case law or relevant statutory provisions, that they were simply complying with the timeline imposed by the

## V. CONCLUSION

For the reasons set forth above, Appellant's appeal from the Bankruptcy Judge's July Order, which denied Appellant's Reconsideration Motion of the Bankruptcy Judge's March Order, is **DENIED**. An appropriate order follows.

Dated: November 24, 2024                    */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

---

Bankruptcy Judge. (*See* ECF No. 9 at 4, 6–7.) Regardless, it is not necessary for the Court to survey these arguments to dispose of the two primary issues on appeal analyzed above, so it has declined to do so.